**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| **MIKEL YOUNG** | * | |
| #411159-2961237 | * | |
| Western Correctional Institution | * | |
| 13800 McMullen Hwy, SW | * | |
| Cumberland Maryland  21502 | * | |
| Plaintiff | * | |
| | * | |
| | * | |
| v. | * | **Docket Number      1:21-cv-206** |
| | | * |
| | * | |
| **STATE OF MARYLAND** | * | |
| | * | |
| **MARYLAND DEPARTMENT** | * | |
| **OF PUBLIC SAFETY AND** | * | |
| **CORRECTIONAL SERVICES** | * | |
| | * | |
| **ROBERT L. GREEN** | * | |
| **O. WAYNE HILL** | * | |
| **JAMA ACUFF** | * | |
| **WALTER WEST** | * | |
| **DENISE GELSINGER** | * | |
| **JEFFREY NINES** | * | |
| | * | |
| **LT. G. COPELAND** | * | |
| **OFC. D. ARNDT** | * | |
| **OFC. C. HOLLAND** | * | |
| **LT. E. BLAKE** | * | |
| | * | |
| **SEVERAL UNKNOWN** | * | |
| **CORRECTIONAL OFFICERS** | * | |
| **AT THE MARYLAND** | * | |
| **DEPARTMENT OF PUBLIC** | * | |
| **SAFETY AND CORECTIONS** | * | |
| | * | |
| **JAMAR MACKALL, #437410/2051289** | * | |
| **RONNIE PETERS, #363963/2266772** | * | |
| **MICHAEL JONES #369921** | * | |
| **UNIDENTIFIED INMATE** | * | |
| | * | |
| | * | |
| Defendants | * | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Mickel Young, by and through his attorney hereby files this Complaint against the Defendants, the State of Maryland, and the Secretary of the Maryland Department of Public Safety and Correctional Services (hereinafter DPSCS), the Wardens of Maryland Correctional Institution Jessup, Eastern Correctional Facility West, Maryland Correctional Institution Hagerstown, North Branch Correctional Facility, and known and unknown correctional officers with the DPSCS and in support thereof, states as follows:

PARTIES

1.      Plaintiff, Mickel Young, a citizen of the State of Maryland, and at all times relevant to this action, was and is a prisoner in the custody of the DPSCS.  During the events described in this complaint he was housed in various departmental facilities, including the Maryland Correctional Institution Jessup (MCIJ), Eastern Correctional Facility West (ECIW), Maryland Correctional Institution Hagerstown (MCIH), and the North Branch Correctional Facility (NBCF).

2.      There are several correctional officers who witnessed certain events described in this complaint who are known and unknown to the Plaintiff at this time and whose identities can be learned and or confirmed during discovery.

3.      Defendant Department of Public Safety and Correctional Services (DPSCS) is established as a principal department of the State of Maryland pursuant to Maryland Code, Correctional Services ("CSA") § 2-101.  The Maryland Division of Corrections ("DOC") is a unit of the Department, CSA § 2-101, organized to incarcerate

certain criminal defendants sentenced by Maryland courts.  The DOC is tasked with operating and overseeing Maryland's state prison facilities, including MCIJ, ECIW, MCIH, and NBCF.

4.      Defendant State of Maryland, at all times relevant to this action, was in charge of and operated the Maryland Division of Correction.  The State was and is responsible for and had the duty to provide care, safekeeping and protection to all persons in the custody of the State.  The State was also the employer of all other Defendants who are sued in this action.

5.      Defendant Robert L. Green is sued in his official capacity as the Secretary of DPSCS, and stands in the shoes of his predecessors for the purposes of this action. MCIJ, ECIW, MCIH, and NBCF are managed and maintained by DPSCS.  Defendant Green is aware of DPSCS's policies and practices regarding violence among prisoners. He is also knowledgeable of the requirements of federal and state law, including the Eighth and Fourteenth Amendments to the United States Constitution, the Maryland Declaration of Rights, and Section 504 as they pertain to the treatment of individuals incarcerated within DPSCS.   Defendant Green is named in this action in his individual and official capacities.

6.      Defendant O. Wayne Hill is the Commissioner of Corrections at DOC (the Commissioner").  The Commissioner is responsible for the administration of DPSCS and is responsible to the Secretary of DPSCS and the Governor for the supervision of prisoners and correctional staff.  CSA §§ 3-203 *et seq*.  The Commissioner's responsibilities also include responding to appeals of complaints and grievances brought by individuals in the Department's custody.  As the Commissioner, Mr. Hill is aware of

DPSCS and DOC policies and practices regarding threats and violence among prisoners. The Commissioner is also aware of federal law, including the Eight and Fourteenth Amendments to the United States constitution and the Maryland Declaration of Rights. Defendant Hill is named in this action in his individual and official capacities.

7.     Defendant Jama Acuff is the warden of MCIJ and is responsible for the governance, discipline and policies of that institution.  CSA § 3-211.  In addition, Ms. Acuff is responsible for the enforcement of DPSCS regulations and directives.  As warden, Ms. Acuff is the legal custodian of all individuals incarcerated at the MCIJ and was responsible for their safe, secure and humane treatment.  As warden, Ms. Acuff is aware of DPSCS's policies and practices regarding prisoners, including policies and practices regarding threats and violence among inmates.  As warden, Ms. Acuff was also aware of federal law, including the Eight and Fourteenth Amendments to the United States constitution and the Maryland Declaration of Rights.  Defendant Acuff is named in this action in her individual and official capacities.

8.     Defendant Walter West is the warden of ECIW and is responsible for the governance, discipline and policies of that institution.  CSA § 3-211.  In addition, Mr. West is responsible for the enforcement of DPSCS regulations and directives.  As warden, Mr. West is the legal custodian of all individuals incarcerated at the ECIW and was responsible for their safe, secure and humane treatment.  As warden, Mr. West is aware of DPSCS's policies and practices regarding prisoners, including policies and practices regarding threats and violence among inmates.  As warden, Mr. West was also aware of federal law, including the Eight and Fourteenth Amendments to the United States constitution and the Maryland Declaration of Rights.  Defendant West is named in

this action in his individual and official capacities.

9.      Defendant Denise Gelsinger is the warden of MCIH and is responsible for the governance, discipline and policies of that institution.  CSA § 3-211.  In addition, Ms. Gelsinger is responsible for the enforcement of DPSCS regulations and directives.  As warden, Ms. Gelsinger is the legal custodian of all individuals incarcerated at the MCIH and was responsible for their safe, secure and humane treatment.  As warden, Ms. Gelsinger is aware of DPSCS's policies and practices regarding prisoners, including policies and practices regarding threats and violence among inmates.  As warden, Ms. Gelsinger was also aware of federal law, including the Eight and Fourteenth Amendments to the United States constitution and the Maryland Declaration of Rights. Defendant Gelsinger is named in this action in her individual and official capacities.

10.     Defendant Jeffrey Nines is the acting warden of NBCI and is responsible for the governance, discipline and policies of that institution.  CSA § 3-211.  In addition, Mr. Nines is responsible for the enforcement of DPSCS regulations and directives.  As acting warden, Mr. Nines is the legal custodian of all individuals incarcerated at the NBCI and was responsible for their safe, secure and humane treatment.  As acting warden, Mr. Nines is aware of DPSCS's policies and practices regarding prisoners, including policies and practices regarding threats and violence among inmates.  As acting warden, Mr. Nines was also aware of federal law, including the Eight and Fourteenth Amendments to the United States constitution and the Maryland Declaration of Rights. Defendant Nines is named in this action in his individual and official capacities.

11.     Defendants Lt. G. Copeland, Ofc. D. Arndt, Ofc. C. Holland and Lt. E. Blake are correctional officers who witnessed various actions and events relevant to this

action, including assaults on Mr. Young.  There are other correctional officers who

witnessed and or have information about the actions and events relevant to this action,

including assaults on Mr. Young and information regarding the hit or threats against Mr.

Young.   At all relevant times the known and unknown correctional officers were

employees of DPSCS, and as such, were duly authorized state employees and agents,

acting under the color of state law, and within the scope and course of their respective

duties, and with the complete authority and ratification of DPSCS and the State of

Maryland.

12.     Jamar Mackall, #437410/2051289, Ronnie Peters, #363963/2266772,

Michael Jones #369921 and another unidentified inmate are inmates who were in the

custody of the Department of Public Safety and Correctional Services who violently

assaulted, battered, beat and stabbed Mr. Young at the ECIW facility on or about January

23, 2018, and through information and belief continue to be in the custody of the

Department of Public Safety and Correctional Services. (The inmate defendants)

13.     Plaintiff believes and thereon alleges that each Defendant is and at all

times relevant hereto was, the agent, employee, and representative of each other

Defendant, with the exception of the inmate defendants.  Each Defendant, with the

exception of the inmate defendants, in doing the acts, or in omitting to act as alleged in

this Complaint, was acting within the scope of his or her actual and apparent authority, or

the alleged acts and omissions of each Defendant as agent subsequently were ratified and

adopted by each other Defendant as principal.

14.     In committing or omitting to perform the acts alleged in this Complaint,

Defendants acted knowingly, maliciously, and with reckless and callous disregard for

Plaintiff's rights, justifying an award of punitive damages against each individual Defendant.

15.     All Defendants are jointly and severally liable for damages and injuries to Plaintiff.

## JURISDICTION AND VENUE

16.     Jurisdiction is proper in this court as this is an action for violation of the Plaintiff's civil and constitutional rights by the Defendants under 42 U.S.C. Section 1983 as well as other torts.

17.     Due to the federal questions involved in the consideration of the Plaintiff's claims under the above-stated laws, this Court has jurisdiction under 29 U.S.C. §1331.

18.     Venue is appropriate to this Court because all parties reside and or are located in the state of Maryland.   Additionally, the tortious acts and omissions occurred in Maryland and injured Mr. Young there as well.

## PRE-SUIT REQUIREMENTS

19.     Mr. Young fits under the exception to the notice requirements of the Maryland Tort Claims Act because the Defendants were aware of the incidents upon which this suit is based as well as the injuries that Mr. Young sustained as a result thereof.  The prison officials filed Notices of Inmate Rule Violations against Mr. Young and other process, statements and reports as a result of the incidents and injuries described in this complaint.

## STATEMENT OF FACTS

20.     On January 25, 2013 in Prince George's County Circuit Court, Mr. Young was sentenced to the Department of Corrections after pleading guilty to First Degree

Assault and related charges.   Mr. Young received a sentence totaling 45 years with all but 20 years suspended.

21.      On or about February 26, 2015, while confined at the Maryland Correctional Institution – Jessup (MCIJ),  Mr. Young  was involved in a physical fight with another inmate.  As a result of that altercation, Mr. Young learned that a prison gang had put a hit on him.  To put a hit on someone in prison is a slang term that means that a prison gang has retained a person or another gang to carry out a threat or a plan to kill or seriously injure the person in question.    The officials at MCIJ were aware of this situation regarding Mr. Young, because he was charged with First Degree Assault and related charges as a result.  As a result of this incident he was also transferred to Maryland Correctional Institution – Hagerstown (MCIH).

22.      On or about June 26, 2016 Mr. Young was involved in another physical fight with another inmate while at the MCIH.  This incident was also related to the gang hit that had been placed on Mr. Young.  The officials at MCIH were aware of this situation regarding Mr. Young, because he was charged with a violation of inmate rules as a result. As a result of this incident he was also transferred to the Eastern Correctional Institution – West (ECIW).

23.      On or about February 14, 2017, shortly after Mr. Young was transferred to ECIW, Lieutenant G. Copeland counseled him about the gang hit.  They discussed it in detail, and Lt. Copeland also reviewed Mr. Young's file which contained the record of the previous altercations with other inmates.  Lt. Copeland asked Mr. Young about the specific gangs that he had problems with, and told him that he could get a new start at ECIW. Lt. Copeland also told Mr. Young that there are gangs in every unit.  This

conversation demonstrates that the ECI officials were aware of the hit that had been placed against Mr. Young.  Additionally, Mr. Young also received a Notice of Inmate Rule Violation because after Lt. Copeland told him that there were gangs in every unit, Mr. Young refused to go to his assigned housing unit.

24.     Mr. Young subsequently learned that the same individual that he had previously fought with at MCIH was also transferred to ECI, and that upon information and belief that person was assigned to ECI East (ECIE). Mr. Young encountered the person with whom he fought at MCIH in or around October 2017.

25.     Shortly thereafter, on January 23, 2018, Mr. Young went to the showers at ECIW.  According to the Notice of Inmate Rule Violation given to Mr. Young on that date, video of the incident shows that another inmate followed him into the shower and began to engage him in a fist fight, then three other inmates entered the shower and brutally and repeatedly stabbed Mr. Young.  As a result of this violent encounter Mr. Young sustained very serious and life-threatening injuries, including a split lip, laceration of several arteries over his right eye which had to be clamped and stitched, and stab wounds in his temple, back and head.   This violent beating and stabbing was an attempt by gang members to carry out and execute the hit that had been placed on Mr. Young, and it almost succeeded in ending his life. Officials at the ECI-W are aware of this incident because they filed a Notice of Inmate Rule Violation against Mr. Young as a result of this incident.

26.     At times during this incident, Mr. Young was surrounded by his assailants. No correction officers ever came to break up the incident, and Mr. Young had to fight his way away from his assailants and out of the shower.

27.     The shower facility at ECIE is in the recreation hall.  Upon information and belief, this is different from the shower facility at every other correctional institution in the Maryland Department of Corrections.  Due to its placement in the recreation hall, it is not conducive to being monitored.  It is well known that the shower can be a very dangerous place for inmates, in that it is a place where fights and injuries can occur.  The placement and set up of the shower facility at ECIW is known to be dangerous and to create a dangerous environment for inmates and a place where fights and other injuries often occur.  Additionally, due to its configuration, placement and set up, correctional officers are often unaware when inmates are involved in fights or experience injuries and there is often a delay or failure to respond to problems and dangerous incidents when they occur.  Officials at the ECIW and the DPSCS are aware of these problems with the location, placement, set up and configuration of the shower facilities at ECIW and the dangerous conditions they present for inmates, and were aware of the problems at the time Mr. Young was assaulted, yet they still allow the dangerous environment to persist.

28.     On or about September 10, 2018 while still at the ECIW, Mr. Young was attacked by his cellmate.  This attack was another direct attempt to carry out and execute the hit that had previously been placed on Mr. Young. Mr. Young has subsequently learned that at the time of the attack, the cellmate had full blown Acquired Immune Deficiency Syndrome (AIDS).  On the date above Mr. Young's cellmate drugged him by putting something in his food and or drink, and then stabbed and injected him with a needle containing the cellmate's blood.  Mr. Young reported this incident to the prison officials and to the nurse who was on duty. The nurse checked him out and agreed that she could see a site on his arms similar to an injection site.  Mr. Young asked the nurse

for an antidote or medical protocol that would prevent him from developing AIDS as a result of this attack.  He was told he would receive it, but he never did.  The officials at the ECIW are aware of this incident and they filed a Notice of Inmate Rule Violation against Mr. Young as a result of this incident.

29.     Mr. Young was transferred to North Branch Correctional Facility (NBCI) and placed on a lock up period.  He informed the officials of everything that had gone on with him and wrote a statement.  Despite his history and the officials' knowledge of the hit against him and the things that had occurred as a result of the hit, instead of sending him into protection when he was released from the lock up period, the officials sent Mr. Young into the compound, where he was again involved in a physical altercation as a direct result of the hit against him.  Prison officials are aware of this incident because they filed a Notice of Inmate Rule Violation against Mr. Young as a result of this incident.  They placed him into the lock up and brought him a waiver to sign regarding this incident.  Mr. Young signed the waiver, however he did not and does not know or understand everything it says.

30.     Mr. Young was never advised of his rights with regard to filing objections and notifications regarding his treatment while in the DPSCS.  Mr. Young did not and does not intend to waive any rights he has with regard to his treatment while in the DPSCS, especially as it applies to his protection from the very real threats to his life that exist while he is under DPSCS custody.

31.     All Defendants herein are agents and or employees of the State of Maryland, who is liable for their actions under the theory of Respondeat Superior.  Defendants DPSCS and the State of Maryland knew and or were aware of the acts

alleged in this Complaint.

### COUNT 1
**(42 U.S. Code § 1983 – Subjecting Plaintiff to Serious Harm and a Substantial Risk of Serious Harm in Violation of the Eighth Amendment)**

32.     The allegations and averments of facts contained in all preceding paragraphs are hereby adopted and incorporated by reference as though stated in full herein.

33.     The Eighth Amendment to the United States Constitution, which is incorporated against the States by the Fourteenth Amendment, provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

34.     Plaintiff brings suit pursuant to 42 U.S. Code § 1983 to seek redress for Defendants' infliction of cruel and unusual punishments.  Defendants' actions and omissions as described above and with regard to Mr. Young and the failure to protect him from threats and physical altercations against his life despite their awareness of the these threats and altercations subject him to cruel and unusual punishment.

35.     Defendants failed to remedy the wrongs against Mr. Young, created policies and or customs under which unconstitutional and unlawful practices occurred, allowed such policies and or customs to continue, and were deliberately indifferent in both their own conduct and in managing their subordinates, which indifference caused the constitutional violations described herein.

36.     Mr. Young has sustained and continues to suffer serious and unreasonable risks of harm by the conduct of the Defendants, including but not limited to physical injury, humiliation, disruption of his relationships with his loved ones, severe anxiety and

emotional distress, and extended terms of confinement because of the altercations he has been involved in and continues to find himself involved in due the threats against his life and the Defendants' failure to protect him against such, and other ongoing failures.

**COUNT 2**
**(42 U.S. Code § 1983 – Constitutional Denial of Due Process in**
**Failing to Train and or Supervise)**

37.     The allegations and averments of fact contained in all preceding paragraphs are hereby adopted and incorporated by reference as though stated in full herein.

38.     Mr. Young is in the custody of the Defendants, and as such, a special relationship exists between them that required the Defendants to provide protection and assistance to him.

39.     The Defendants are policymakers for DPSCS and in that capacity establish policies, procedures, customs and or practices for DPSCS and DOC regarding the housing and conditions of confinement of prisoners and the conduct of its staff.  They are responsible for implementing DPSCS policies and regulations at their particular prison facilities and for supervising DPSCS staff therein.

40.     Defendants develop and maintain policies, procedures, customs and or practices regarding the treatment of prisoners who have been threatened or have a hit on them by gang members and or other inmates that exhibit a deliberate indifference to the constitution rights of such prisoners, as Defendants knew that such policies routinely deprive Plaintiff and others similarly situated of their constitutional rights.

41.     Defendants failed to properly train and supervise DPSCS staff with respect

to reasonable policies, actions and omissions with respect to reasonable accommodations for prisoners who have been threatened or have a hit put on them, the legal requirements for physical and auxiliary accommodations for such prisoners and properly responding to such prisoners' complaints about the inadequacy or lack of such accommodations.

42.     Defendants were deliberately indifferent in failing to provide the requisite training and supervision to DPSCS staff or the requisite protection and assistance to the Plaintiff.

43.     Defendants' actions, omissions and failures in these regard caused harm to the Plaintiff as described herein.

## COUNT 3
### (Violations of Maryland Declaration of Rights/State Constitutional Claim)

44.     The allegations and averments of fact contained in all preceding paragraphs are hereby adopted and incorporated by reference as though stated in full herein.

45.     This is, in part, an action to redress the deprivation under color of statute, ordinance, regulation, custom or usage of a right, privilege and immunity that are secured to the Plaintiff by the Declaration of Rights of the Constitution of the State of Maryland, including but not limited to Articles 2, 19, 24 and 26, and arising under the law and statutes of the State of Maryland.

46.     During all times mentioned herein, Defendants engaged in the illegal conduct herein mentioned, to the injury of Mr. Young and deprived him of his then existing and clearly established rights, privileges and immunities secured to her by Declaration of Rights of the Constitution of the State of Maryland, including but not

limited to Articles 2, 19, 24 and 26, and arising under the laws and statutes of the State of Maryland.

47.     All defendants acting under color of Law, have subjected Mr. Young to conduct consisting of unreasonable, unnecessary and excessive force, deprivation of his due process rights, false imprisonment, improper detention, improper investigation, improper training and producers and protocols which may, upon further information, constitute a pattern and procedures and protocols which may, upon further information, constitute a pattern and practice by the Defendants, in denial of the rights, privileges and immunities guaranteed to Mr. Young by the Constitution of the State of Maryland.

48.     This conduct consists of unreasonable or excessive force, improper supervision, police misconduct and the other allegations set forth above which was visited upon Mr. Young by the Defendants, by and through their agents, servants and employees, acting under color of law.  These acts, while carried out under color of law, have no justification or excuse in law and are instead gratuitous, illegal, improper, objectively unreasonable and unrelated to any activity in which police officers may appropriately and legally engage in the course of protecting persons or property or ensuring civil order.

49.     The acts alleged herein violated clearly established constitution rights of Mr. Young, were not objectively reasonable, and were done under circumstances in which no reasonable person or officer would fail to realize that his or her conduct was a violation of Mr. Young' rights.

50.     Defendants and their agents, servants and/or employees acted improperly and/or acted willfully, knowingly and purposefully with specific intent, to deprive Mr.

Young of the rights, privileges and immunities secured to him by the Constitution of the State of Maryland, including but not limited to the following:  Freedom from illegal detention or imprisonment; freedom from the use of excessive or unreasonable force; freedom from physical abuse, coercion and intimidation; the right to due process; and the right to life, the right to liberty.  All of these rights are secured to the Plaintiff by the provisions of the Declaration of Rights of the Constitution of the State of Maryland.

51.     As a result of the Defendants' conduct as set forth above, Mr. Young has suffered and will continue to suffer severe anguish, emotional distress, medical and other related expenses and a loss of income.

## COUNT 4

### (Violations of Articles 16 and 25 of the Maryland Declaration of Rights)

52.     The allegations and averments of fact contained in all preceding paragraphs are hereby adopted and incorporated by reference as though stated in full herein.

53.     At all relevant times, each Defendant was acting under the color of state law as departments, officers, and employees of the State of Maryland, and their acts and or omissions were conducted within the scope of their official duties or employment.

54.     As described herein, Defendants' acts and omissions deprived Mr. Young of his rights under the Maryland Declaration of Rights, Articles 16 and 25, to be free from cruel and unusual punishment.

55.     The acts and omissions described herein caused injuries to Mr. Young.

56.     At all relevant times, Defendants were acting pursuant to DPSCS custom, policy, authority, decision, ordinance, regulation, widespread habit, usage or practice in their actions toward Mr. Young.

57.     As a direct and proximate result of Defendants' conduct, as described herein, Mr. Young has suffered actual physical and emotional injuries, and other damages and losses, some of which may be continuing in nature, thereby entitled him to compensatory and special damages.

58.     Mr. Young is therefore entitled to money damages to compensate him for his injuries and for the violation and depravation of his rights under the Maryland Declaration of rights.

## COUNT 5

**(Vicarious Liability)**

59.     The allegations and averments of fact contained in all preceding paragraphs are hereby adopted and incorporated by reference as though stated in full herein.

60.     In addition to their own individual liability described above and at all times pertinent to the subject matter of this case, Defendants, including the unknown correctional officers involved with and responsible for Mr. Young's protection and safety were also the agents, servants and/or employees of Defendants State of Maryland.

61.     At all times pertinent herein, Defendants, including the unknown correctional officers  were acting in concert with, for and on behalf of, at the insistence, request and instruction of Defendants State of Maryland; and were otherwise acting

within the scope of their responsibility, authority and employment as agent, servant and/or employee of said Defendants.

62.     Defendants are vicariously liable for the acts of the correctional officers who were acting in the cause of and within the scope of their responsibility, authority and employment as agents, servants and/or employees of Defendants State of Maryland and at all times pertinent herein.

63.     Defendant State of Maryland is liable for the acts of the unknown correctional officers involved in the facts described above that give rise to this litigation and complained of herein under the Local Government Tort Claims Act and the State Tort Claims Act.

64.     As a result of the Defendants' conduct as set forth above, Mickel Young has suffered and will continue to suffer severe mental anguish, emotional distress, medical and other related expenses.

**<u>COUNT 6</u>**
**(Negligence – All Defendants)**

65.     The allegations and averments of facts contained in all preceding paragraphs are hereby adopted and incorporated by reference as though stated in full herein.

66.     The Defendants individually and/or through their agents, servants and/or employees had a duty to use reasonable care to protect Mr. Young, not to harm to Mr. Young or to violate his rights.

67.     The Defendants owed a duty to Mr. Young arising out of their special relationship with him to protect him against unreasonable risk of physical harm.

68.     The Defendants knew that Mr. Young faced a serious, real and unreasonable

threat of violence and physical harm.

69.      This duty was breached.  The breaches included, but are not limited to, the

following:

a.  Failing to take the threats against his life seriously;

b.  Improperly investigating the threats against his life;

c.  Failing to ensure that Mr. Young was protected against physical and mental

harm from those who had placed the threats against his life;

d. Transferring both Mr. Young and the person who was involved in a fight with

him to the same facility;

e.  Placing him in an institution with the shower facilities in the recreation room

when prison officials knew that this shower configuration is known to be dangerous and

to create a dangerous environment for inmates and a place where fights and other injuries

often occur.

f.  Allowing the shower configuration to continue to be used even after prison

officials knew and were aware that this non standard and unusual configuration was

responsible for and the scene of many fights and other injuries to inmates.

g.  Failure to properly train employees and prison officials as to how to handle

and respond to threats against inmates lives even though they know that these kinds of

threats happen frequently and that Mr. Young has been the subject of these threats;

h.  Further breaches to be identified through discovery.

70.      Defendants' breaches were the direct and proximate cause of harm to Mr.

Young.  As a result of the Defendants' conduct as set forth above, Mr. Young has

suffered and will continue to suffer physical injury, severe mental anguish, emotional

distress, medical and other related expenses.

### COUNT 7

### (ASSAULT AND BATTERY – Inmate Defendants)

71.     The allegations and averments of facts contained in all preceding paragraphs are hereby adopted and incorporated by reference as though stated in full herein.

72.     Jamar Mackall, #437410/2051289, Ronnie Peters, #363963/2266772, Michael Jones #369921 and another unidentified inmate assaulted, battered, beat and violently stabbed Mr. Young.  They acted with the intent and capability to do bodily harm to Mr. Young.  Their conduct was perpetrated with actual malice.

73.     Jamar Mackall, #437410/2051289, Ronnie Peters, #363963/2266772, Michael Jones #369921 and another unidentified inmate's actions caused Mr. Young to be put in reasonable apprehension of an imminent battery.

74.     Jamar Mackall, #437410/2051289, Ronnie Peters, #363963/2266772, Michael Jones #369921 and another unidentified inmate assaulted, battered, beat and stabbed Mr. Young.  Their conduct constituted an intentional, non-consensual touching of Mr. Young and was undertaken deliberately and with actual malice.

75.     As a result of the actions of Jamar Mackall, #437410/2051289, Ronnie Peters, #363963/2266772, Michael Jones #369921 and another unidentified inmate, Mr. Young has suffered and will continue to suffer substantial damages, including but not limited to extreme and permanent pain and suffering, permanent and debilitating injury, severe mental anguish and distress, medical and other related expenses.

WHEREFORE, the Plaintiff, Mickel Young, seeks compensatory damages in an amount which exceeds Seventy- Five  Thousand Dollars and 00/100 ($75,000), punitive damages in an amount to be determined, plus interest, costs, expert witness fees and attorney fees against the Defendants jointly and severally, and any and all additional relief that Plaintiff's causes require. Plaintiff further requests that Defendants be enjoined and directed to provide him with the proper care, protection and housing so that he may be protected from any threats, hits and acts of violence during his custody in the DPSCS.

Respectfully Submitted,

January 25, 2021

Wanda J. Dixon, Esq.
The Dixon Law Firm, LLC
Attorney for Mr. Young
Client Protection Fund Number 8712010161
1401 Mercantile Lane Suite 381
Largo, MD 20774
wdixon@thedixonlawfirm.law
301-456-5156

DEMAND FOR JURY TRIAL

Mr. Young respectfully requests that this matter be heard by a jury.

Wanda J. Dixon

21